FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

MAY 17 2013

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CHARLOTTE WEATHERFORD and ANN )
WEATHERFORD, a minor child, )
)
    Plaintiffs, )
) 3:10-cv-729-RCJ-RAM
    v. )
) **ORDER**
NEVADA RURAL HOUSING AUTHORITY, )
et al., )
)
    Defendants. )

---

Currently before the Court is Defendants' Motion for Summary Judgment (#51). The Court heard oral argument on March 26, 2012.

The Clerk's Office inadvertently closed this case on March 26, 2012, and did not enter this order as a result. The Clerk's Office reopened this case on April 1, 2013, and now enters this order.

## BACKGROUND

**I.  Complaint**

On November 22, 2010,[1] Plaintiff Charlotte Weatherford ("Weatherford"), *pro se*, filed a complaint on behalf of herself and her minor daughter, Ann Weatherford ("Ann").[2] (Compl. (#5) at 1). In the complaint, Weatherford sued the Nevada Rural Housing Authority ("NRHA"); Heidi Fettic, an NRHA rental assistance manager; Terry Smith, an NRHA rental assistance

---

[1] The clerk of the court docketed her complaint on March 7, 2011, after the magistrate judge granted her motion for leave to proceed *in forma pauperis*. (*See* Order (#4); Compl. (#5)).

[2] Pursuant to this Court's ruling in November 2011, Ann is no longer a party to this case because Weatherford failed to obtain counsel to represent Ann. (Order (#39) at 3).

director; and Kimberle McKee[3], an NRHA case worker (collectively "Defendants"). (*Id.* at 1-2). Weatherford alleged the following in her complaint. (*Id.* at 3). In December 2008, she had "put in for a reasonable accommodation" which went unanswered. (*Id.*). She had asked for three informal hearings but all were denied. (*Id.*). There was mold in her house from November 2009 and on. (*Id.*). In March 2010, Weatherford's voucher was taken away from her after she had refused to sign a paper giving up her rights to file an U.S. Department of Housing and Urban Development ("HUD") complaint. (*Id.*).

Weatherford alleged three causes of action in her complaint. (*Id.* at 4-6). In the first cause of action, Weatherford alleged that her civil rights had been violated pursuant to 42 U.S.C. § 3604(f)(3)(B), Section 504 of the Rehabilitation Act, 24 C.F.R. § 982.505(d), 24 C.F.R. § 8.11, 24 C.F.R. § 8.28(a)(5), and 24 C.F.R. § 8.33. (*Id.* at 4). Specifically, in December 2008, Weatherford had put in a request for a reasonable accommodation to the NRHA. (*Id.*). Fettic did not give her the accommodation or a denial letter. (*Id.*). In January 2010, Weatherford put in for two other reasonable accommodations that Fettic later sent to Weatherford's doctor. (*Id.*). The doctor misunderstood the accommodation for Ann, who had asthma. (*Id.*). The doctor found that Weatherford and Ann did not have a disability because they had allergies and asthma. (*Id.*).

In her second cause of action, Weatherford alleged that her civil rights had been violated pursuant to 42 U.S.C. § 3617. (*Id.* at 5). Specifically, in March 2010, Fettic asked Weatherford to sign an agreement whereby Weatherford would waive her right to file any additional grievances or complaints with HUD. (*Id.*). Smith had suspended Weatherford's voucher when Smith discovered that Weatherford had filed a complaint with HUD. (*Id.*). In November, Weatherford had mailed a certified letter to NRHA about the mold but had received no response. (*Id.*). She had also emailed Fettic and McGee about the mold but no action was taken. (*Id.*).

In her third cause of action, Weatherford alleged that her civil rights had been violated

---

[3] Weatherford incorrectly identified Defendant Kimberle McKee as "Kimberly McGee." (*See* Mot. for Summ. J. (#51) at 1 n.1).

pursuant to 24 C.F.R. § 982.555(a)(1)(iv). (*Id.* at 6). Specifically, in September, October, and November 2009, Weatherford had put in a request for informal hearings. (*Id.*). Fettic had denied all of the hearings for a reasonable accommodation for a larger room size based on a disability. (*Id.*). Fettic did not issue a denial letter. (*Id.*).

II. **Summary Judgment Facts**

On December 1, 2008, Weatherford wrote a letter to the NRHA. (Defs' Ex. 3 (#51-1) at 45). The letter informed the NRHA that the house Weatherford was currently residing in on Marion Russell Drive was on the market to be sold. (*Id.*). The Marion Russell house was a three-bedroom house "under a reasonable accommodation." (*Id.*). Weatherford sought a "reasonable accommodation based on [her] disabilities" and sought to keep the three-bedroom house for her accommodation. (*Id.*). In 1993, Weatherford had won a work-related court case due to an injury to her lower back. (*Id.*). She requested a three-bedroom house that gave her a "place and sense of relaxation where [she did] not have a feeling of confinement." (*Id.*). She did not want a place with stairs because she did not want to re-injure herself. (*Id.*). She also wanted to be in a certain area because of past incidents involving her son and her "PTSD because of the abuse of her son and [herself] when they lived in a different area." (*Id.*).

On December 9, 2008, Weatherford submitted a request for a reasonable accommodation. (Defs' Ex. 5 (#51-1) at 79). Weatherford stated that she had a disability and that she was requesting a reasonable accommodation for a three-bedroom house that had the same floor plan as the three-bedroom house that she was currently living in. (*Id.* at 80). She had difficulty getting used to her environment and the three-bedroom house would give her a "place to feel more at ease" and help with her "physical" and "mental." (*Id.*). With respect to her mental issues, she stated that changes to her environment caused her anxiety which brought on depression for long periods of time. (*Id.*). A three-bedroom house would also "benefit [her] because [she] was in school and [she needed] a place to study for [her] future classes in college." (*Id.*). She identified Dr. Cesar Udani as the professional who could verify her disability and the need for the accommodation requested. (*Id.* at 79).

On December 10, 2008, NRHA sent Dr. Udani a form for verification of disability and

for reasonable accommodation. (Defs' Ex. 6 (#51-1) at 83). On January 8, 2009, Dr. Udani returned the verification form to NRHA. (Defs' Ex. 7 (#51-1) at 86). The form stated that Weatherford had a disability and that she needed the requested accommodation to have an equal opportunity to use and enjoy her home. (*Id.* at 87). In response to the accommodation and why it was needed, Dr. Udani responded "ground level three bedroom place due to severe low back pain and lower extremity weakness. She has 2 children (1 in college who comes home on weekends). Also she needs a QUIET study room since she is in college." (*Id.*).

On January 27, 2009, NRHA Housing Specialist Kimberle McKee sent Weatherford a letter denying Weatherford's request for a reasonable accommodation and informed Weatherford that, at her re-certification on June 1, 2009, her payment standard would be lowered to a two-bedroom payment standard due to the size of her family. (Defs' Ex. 9 (#51-1) at 99). The letter explained that NRHA had denied her request for a three-bedroom unit as "not reasonable" because it would cost an additional $35.28 annually. (*Id.* at 101). In making that decision, the NRHA spoke to NRHA Attorney Ernie Adler and considered the NRHA subsidy standards to determine bedroom size/voucher size, Dr. Udani's letter, and Weatherford's letter. (*Id.*). Heidi Fettic, NRHA's Rental Assistance Manager, signed the denial form. (*Id.*).

On February 24, 2009, Weatherford sent NRHA a letter requesting an "informal review on [her] denial to [her] reasonable accommodation based on a disability." (Defs' Ex. 10 (#51-1) at 103). On March 9, 2009, Fettic wrote Weatherford a letter informing her that her requested informal review would be with Terry Smith, Rental Assistance Director, on March 17, 2009. (Defs' Ex. 11 (#51-1) at 105).

At the informal review, Fettic, Smith, Melanie Evans (HR Administrator), and Weatherford were present. (Defs' Ex. 12 (#51-1) at 109). The transcript reveals the following. (*Id.*). Fettic explained her denial by reviewing Dr. Udani's letter. (*Id.* at 110). Fettic explained that she interpreted Dr. Udani's letter as stating that Weatherford needed a ground level arrangement because of severe low back pain and lower extremity weakness and that Weatherford needed three bedrooms because she was in college and needed a quiet study

room. (*Id.*). Fettic said Weatherford could have a ground level unit and that they were "not denying that in any way, shape or form." (*Id.*). However, Fettic explained that they could not grant a reasonable accommodation for a three-bedroom unit "simply to have a quiet study room, which is what your doctor stated in this notice." (*Id.* at 111). She explained that they had many clients that were in college and taking classes and that they did not grant an extra bedroom simply for studying. (*Id.*).

In response, Weatherford stated that she had a traumatic brain injury and that Dr. Udani knew about it. (*Id.*). Weatherford stated that when she does need to study she was forced to use her bed because her family would be watching television in the living room, playing on the computer, and kids were coming in and out of the door. (*Id.*). She said she would lose concentration because of that. (*Id.*). Weatherford acknowledged that she was currently living in a three-bedroom unit. (*Id.*). Weatherford acknowledged that she currently used the spare room that her son had been living in as a quiet room to study in. (*Id.*). Weatherford explained that her son had moved out and that they had put a table and chair for her in the spare room. (*Id.*). She also used her son's room for storage. (*Id.* at 112).

Weatherford stated that she currently studied while lying down on her bed but that it aggravated her lower back. (*Id.*). Fettic explained that they were not disputing that she had a disability but stated that HUD did not allow for them to grant a bedroom for studying. (*Id.* at 112-13). Fettic also explained that Weatherford's doctor did not state that an extra bedroom for studying was a medical need. (*Id.* at 113). Fettic explained that Dr. Udani stated that "it was an additional bedroom to study." (*Id.*). Fettic told Weatherford that she could find a three bedroom under the two bedroom payment standards and that they were out there. (*Id.*). Weatherford disputed this and said she had already looked and could not find any. (*Id.*). Weatherford said she could not put a desk in her bedroom because it was too small. (*Id.* at 115). Weatherford also stated that she needed a second bathroom and that she had a letter from another doctor that stated she needed a second bathroom. (*Id.* at 117). Weatherford stated that she could not live in a condo or duplex because there would be people right next to her that would keep her up at night and stated that she had depression. (*Id.* at 118).

Weatherford stated that her son was living in Sacramento but came home on the weekends. (*Id.* at 119-20). Her son was living in an apartment in Sacramento temporarily until he finished school. (*Id.* at 120). At the end of the informal review, Weatherford stated, "I don't need a three bedroom. I really don't, okay. But I do need some help. If I have to go to a two bedroom, I need a two bath . . . I don't even know if these places are available because I'm sitting here and don't even know what to do." (*Id.* at 121-22).

In April 2009, Weatherford and her family moved to 621 Bluerock, a three-bedroom home with two bathrooms that they had selected. (Defs' Ex. 1 (#51-1) at 7-8). Weatherford participated in the NRHA housing inspection and signed off on the inspection without noting any problems or issues. (Defs' Ex. 15 (#51-2) at 38-43). On May 12, 2009, Weatherford wrote a letter to her landlord and complained that the air ducts needed to be cleaned and the carpets removed because it was causing health problems for her daughter and herself. (Defs' Ex. 16 (#51-2) at 45). On May 19, 2009, the landlord had the carpets and air ducts professionally cleaned. (Defs' Ex. 17 (#51-2) at 47). On May 27, 2009, Weatherford wrote a letter to her landlord and told the landlord that the home needed new carpeting. (Defs' Ex. 18 (#51-2) at 49). On July 30, 2009, NRHA permitted Weatherford to terminate her lease agreement on 621 Bluerock, after four months, based on her health concerns and issued her a new voucher. (Defs' Ex. 19 (#51-2) at 51; Defs' Ex. 1 (#51-1) at 9).

Weatherford found a three-bedroom, two bathroom house on 1351 Toler. (Defs' Ex. 1 (#51-1) at 9, 12). Weatherford and her husband visited the house before determining whether they wanted to move in. (*Id.* at 9-10). Weatherford had made a commitment to move into the house before NRHA had done its inspection on the property. (*Id.* at 10). On August 24, 2009, Weatherford contacted NRHA and informed it that she had partially moved into the home. (*Id.*; Defs' Ex. 19 (#52-2) at 51). Weatherford explained that she had slept at the house the previous night and felt sick. (Defs' Ex. 1 (#51-1) at 10; Defs' Ex. 19 (#52-2) at 51). NRHA informed Weatherford that because it had not conducted its inspection yet and no contracts had been signed, Weatherford could locate a different unit to move into. (*Id.*). Weatherford responded that she and her family did not want to move again because they had

6

just moved and were tired and exhausted from moving. (*Id.*). On September 2, 2009, NRHA conducted an inspection of 1351 Toler. (Defs' Ex. 20 (#51-2) at 55). The inspection did not reveal any problems with the house and Weatherford, who was present, did not note any problems or issues with the home either. (*Id.* at 55-60).

Weatherford believed that 1351 Toler had a mold problem. (*See* Defs' Ex. 21 (#51-2) at 62-63). As a result, the landlord had the air ducts cleaned on August 10, 2009 and the carpets cleaned on August 4, 2009, August 10, 2009, and September 15, 2009. (*Id.* at 63). On November 23, 2009, the landlord informed Weatherford that, although he sympathized with her allergy issues, he would not replace the carpet in hopes that it would cure her allergies. (Defs' Ex. 23 (#51-2) at 70). Due to her allergy issues, the landlord offered to allow her to terminate her lease early, to provide her with a full security deposit refund, and to provide her with a good reference for her next place. (*Id.*). Weatherford did not accept this offer.

On January 4, 2010, Weatherford submitted another request for a reasonable accommodation for she and Ann. (Defs' Ex. 24 (#51-2) at 72). Weatherford sought "a cleaner and safe home," one that "did not have mold and/or older carpet" lacking in HUD standards, "newer construction a plus," and "a 3 bedroom with a den or 4th bedroom." (*Id.*). Weatherford explained that she and Ann needed the accommodation because they both had asthma from the two houses that they had lived in previously and that she needed extra space for college and physical therapy from the snow outside. (*Id.*). She listed Dr. Udani and Dr. Boris Lokshin as the professionals who could verify her disability and her need for the accommodation requested. (*Id.* at 72-73).

On February 2, 2010, Dr. Lokshin responded to the request for reasonable accommodation verification. (Defs' Ex. 27 (#51-2) at 86). Dr. Lokshin stated that Weatherford did not have a disability. (*Id.*). He stated that an evaluation at his office "did not show any respiratory disability" and that his conclusion was limited to "asthma and allergy." (*Id.*). Dr. Udani did not respond to the request for reasonable accommodation verification. (*See* Defs' Ex. 26 (#51-2) at 81-84). Weatherford admitted that when she submitted the January 4, 2010, request for reasonable accommodation she did not have a prescription for physical therapy

7

from any healthcare provider. (Defs' Ex. 1 (#51-1) at 13). She stated that she needed an extra room for her physical therapy equipment, an exercise ball. (*Id.*). On February 3, 2010, Fettic denied Weatherford's request for a reasonable accommodation because she did not need the accommodation to live as easily as others without disabilities or to enjoy or participate equally in the housing program as easily as others without disabilities. (Defs' Ex. 28 (#51-2) at 88-89). Fettic cited Dr. Lokshin's statement that Weatherford did not have a disability. (*Id.* at 89). Weatherford requested an informal hearing.

On March 9, 2010, Richard Mendoza, a hearing officer, conducted the informal hearing. (Defs' Ex. 13 (#51-2) at 2-3). At the hearing, Fettic, Smith, Adler, and Evans were present for NRHA. (*Id.* at 4). Weatherford and her witnesses, Marlene Kohler and Susan Buchanan, also attended the hearing. (*Id.* at 4-5). Fettic explained that Weatherford had a two bedroom voucher because there were only three people in her home and that the regulations stated that it was two people per bedroom. (*Id.* at 5). Weatherford was currently in a three bedroom unit. (*Id.*). Weatherford recently added her son to the policy, but Fettic explained that the policy does not permit alterations until the next recertification date which was October 2010. (*Id.*). Fettic explained that they had denied her first request because it was "too much of an additional cost to the Housing Authority to simply have a study room for her future college classes." (*Id.*). NRHA denied the second request because her doctor said she did not have a disability with respect to asthma or allergies. (*Id.* at 5-6).

At the hearing, Weatherford claimed that she had a learning disability specifically a traumatic brain injury. (*Id.* at 11). She admitted that she had not submitted any documentation on it. (*Id.*). She admitted that she did not go to a physical therapist. (*Id.* at 15). She stated that she needed physical therapy because of the house she had been in and stated that she had a stationary bike, mini-trampolines, hand weights, and a yoga mat that were in her garage, but they could fit into a room. (*Id.* at 15-16).

Kohler stated that for the past six to eight months, Weatherford and her family had been ill. (*Id.* at 18). A professional company came into the house and said there was mold. (*Id.*). With respect to the mold, Weatherford stated that she had invited NRHA to inspect the house

in November but nobody came out. (*Id.* at 20). On September 10th, Weatherford had to go to the emergency room because she had bronchitis, which she alleged came from the mold. (*Id.* at 21).

The hearing officer acknowledged that if there was a health condition on the residence then something needed to be addressed including finding her another place. (*Id.* at 23). However, the hearing officer stated that Weatherford had not shown why she needed a larger place. (*Id.*). He stated, "[o]kay we'll get you a healthier place, but we can't get you in a larger one, not for the reasons you're stating." (*Id.* at 24).

At the hearing, Weatherford stated that her son was back home and that he needed his own room based on his disabilities. (*Id.*). Weatherford stated that she, her husband, her nine-year old daughter, and her 19-year old son lived in the house. (*Id.*). Her son lived in the house full time.[4] (*Id.* at 25).

The hearing officer asked Weatherford whether issuing her a three-bedroom voucher would resolve her problems. (*Id.* at 30-31). She stated yes. (*Id.* at 31). The hearing officer explained that if her son were to move out again, it would change the amount of people in her house, and the amount of benefits she would receive. (*Id.*). The hearing officer asked Weatherford, "if NRHA is to give you a new three bedroom unit, will you promise to not bring another appeal within a year?" (*Id.*). He asked her to inspect the place before she moved in and to make sure it met her requirements. (*Id.* at 31-32). He asked her to take her friends with her to have them go through the house as well. (*Id.* at 32). She agreed. (*Id.* at 32-33).

On March 9, 2010, the hearing officer issued his findings of fact, conclusions of law, and order. (Defs' Ex. 29 (#51-2) at 92). The hearing officer found that Weatherford had provided a letter stating that her unit could potentially have mold and that she had a requested a three-bedroom voucher due to her son being back in the unit. (*Id.* at 93). The hearing officer found that NRHA and Weatherford agreed to the following: (a) Weatherford would be

---

[4] During the deposition of Weatherford's son, Jonathan, on December 12, 2011, Jonathan stated that, after he had finished school in November 2009, he never lived with his parents, but instead had stayed with friends or other relatives. (Defs' Ex. 8 (#51-1) at 95).

allowed to move into a different unit due to potential mold in her current unit; (b) Weatherford would be issued a three-bedroom voucher due to her family size; (c) should Weatherford's family size change, the voucher would be adjusted according to HUD regulations; (d) Weatherford would find a new unit that met her standards, NRHA would inspect the unit to Housing Quality Standards, and it was Weatherford's responsibility to ensure that the unit met her standards prior to move in; and (e) Weatherford agreed not to bring another appeal to NRHA for at least the next year and that she would stay in the new unit she chose for the full year of the lease. (*Id.*).

On March 10, 2010, NRHA received a letter from HUD in San Francisco informing NRHA that it had received a formal complaint from Weatherford that they had engaged in discriminatory housing practices under the Fair Housing Act. (Defs' Ex. (#51-2) at 97-98). HUD explained that Weatherford alleged that she and her family felt that they had been discriminated based on disability and that Weatherford and her daughter were disabled with asthma. (*Id.* at 104). Weatherford alleged the same facts that she had at the informal hearing. (*Id.*). Weatherford alleged that, at the hearing, NRHA "upheld their decision to deny [Weatherford's] request for a three bedroom voucher." (*Id.*).

On March 16, 2010, NRHA emailed Weatherford an acknowledgment of counseling that memorialized the agreement between NRHA and Weatherford per the hearing officer's findings. (*See* Defs' Ex. 30 (#51-2) at 95). The acknowledgment informed Weatherford that if she concurred with the agreement she should sign the form. (*Id.*). The acknowledgment also stated that the informal hearing held on March 9th had resolved all of Weatherford's outstanding issues including the HUD housing discrimination complaint. (*Id.*).

On March 26, 2010, NRHA sent Weatherford a letter informing her that it had received the Housing Discrimination Complaint from HUD regarding the March 9th hearing determination. (Defs' Ex. 33 (#51-2) at 113). NRHA stated that, "[i]n order to evaluate and complete this review regarding the past and current issues this authority will place the 3 bedroom voucher on hold" and that it would contact her when the "3 bedroom voucher [would] be issued." (*Id.*).

On March 29, 2010, NRHA sent Weatherford a letter stating that she could pick up her three-bedroom voucher based on the change in her household size. (Defs' Ex. 34 (#51-2) at 115). The letter stated that, at the conclusion of the March 9th hearing, she had indicated that all of her complaints had been resolved. (Id.). The letter stated that this had caused confusion due to the HUD discrimination complaint that she had filed after attending the hearing stating that NRHA had denied her request for a three-bedroom voucher. (Id.). The letter stated that Weatherford could rent a three-bedroom with a den or a four-bedroom as long as it met with the three-bedroom payment standard. (Id.).

In response to HUD's investigation, Dr. Lokshin wrote a letter to HUD informing it that his evaluation of Weatherford and Ann showed "no mold allergies." (Defs' Ex. 35 (#51-2) at 117). His evaluation did support "the diagnosis of asthma for nine-year-old Ann, with a questionable diagnosis of asthma for [Weatherford]." (Id.). Neither person appeared to be significantly symptomatic or severe. (Id.). Weatherford had shown various respiratory allergies but not to mold. (Id. at 117-18). Weatheford showed "a significant allergy to cat, which she possesses. She declined removal of the cat." (Id. at 118). Dr. Lokshin stated that he was not sure that they had a disability and that the "only accomodation change [he had] requested [was] removal of the cat, but the family declined." (Id.).

On June 22, 2010, HUD issued a determination of letter findings and found that "reasonable cause [did] not exist to believe that a discriminatory housing practice ha[d] occurred." (Defs' Ex. 36 (#51-2) at 120). HUD dismissed Weatherford's complaint and also found that NRHA was in compliance with Section 504 of the Rehabilitation Act of 1973. (Id.). As part of its findings, HUD stated that "the reasonable accommodation request for an increase from a three-bedroom to a four bedroom voucher due to asthma and physical therapy needs [were] not supported by [Weatherford's] doctors." (Id. at 126).

On October 8, 2010, NRHA received a letter from HUD in Washington, D.C. informing it that Weatherford had requested that HUD's San Francisco office's letter of findings be reviewed. (Defs' Ex. 37 (#51-2) at 129). The letter informed NRHA that the D.C. office had sustained the Letter of Findings issued in San Francisco. (Id.). The D.C. office found that,

"[u]nder the Housing Choice Voucher Program, the responsibility of replacing carpets or cleaning air ducts remain[ed] with the owner of the property not the Housing Authority. Therefore, [Weatherford's] reasonable accommodation request to the NRHA to have the carpets in her home replaced, as well as the air ducts cleaned was not a reasonable request." (*Id.* at 130). The D.C. office found that it was reasonable for NRHA to deny Weatherford's reasonable accommodation request for a three or four bedroom voucher on the basis of disability because her doctor indicated that she did not have a disability that would support the requested accommodation. (*Id.*).

## LEGAL STANDARD

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing

that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

In their motion for summary judgment, Defendants assert that Weatherford has no viable claims based upon the violations of HUD regulations because there is no private right of action to enforce HUD regulations. (Mot. for Summ. J. (#51) at 19). Defendants also assert that Weatherford cannot establish a prima facie case of disability discrimination under the Fair Housing Act or the Rehabilitation Act. (*Id.* at 22, 25). Defendants argue that Weatherford cannot establish that NRHA coerced, intimidated, threatened, or interfered with her rights under the FHA. (*Id.* at 27).

In response, Weatherford argues that the hearing officer's decision failed to include her requests for an additional bedroom for her learning and physical disabilities. (Opp'n to Mot. for Summ. J. (#55) at 1).[5] She asserts that NRHA denied her voucher to move from a house with mold in it after she had filed a HUD complaint. (*Id.* at 13). She asserts that her doctor said she needed a reasonable accommodation but NRHA denied her first request. (*Id.* at 15). She argues that NRHA denied her an informal hearing in 2009, that NRHA did not put "ground floor" as an accommodation to her disability in writing, that she and Ann have asthma, and that NRHA did not promptly move her family from a moldy home. (*Id.* at 15-16). Weatherford

---

[5] Weatherford filed exhibits with her opposition to the motion for summary judgment. These exhibits are either duplicative of Defendants' exhibits or outside of the relevant time frame for this dispute.

13

asserts that NRHA refused to provide additional funding for a person with disabilities. (*Id.* at 16).

Defendants filed a reply. (Reply to Mot. for Summ. J. (#56)).

I. **Claims Regarding HUD Violations: Counts I and III**

As an initial matter, HUD regulations are located in Title 24 of the Code of Federal Regulations. *See* 24 C.F.R. § 1.1 *et seq.* The Court grants Defendants' motion for summary judgment in part on portions of Count I and all of Count III because Weatherford is attempting to enforce HUD's regulations. The Ninth Circuit has not specifically addressed whether there is a private right of action to enforce HUD regulations. However, several circuits that have addressed this issue have found that there is no private right of action to enforce HUD regulations. *See Taylor v. Hous. Auth. of City of New Haven*, 645 F.3d 152, 153 (2d Cir. 2011) (holding that there is no private enforceability of HUD regulations); *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 425 (3d Cir. 2004) (holding that Section 504 of the Rehabilitation Act did not provide a private right of action to enforce those HUD regulations); *Hill v. Group Three Hous. Dev.*, 799 F.2d 385, 394 (8th Cir. 1986) (after reviewing the HUD statutes, regulations, and handbook guidelines, the Court held that plaintiffs had no implied private right of action under the Section 8 program, 42 U.S.C. § 1437f). As such, the Court grants summary judgment on part of Count I and all of Count III because Weatherford does not have a private right of action to enforce HUD regulations.

II. **Count I**

In the remaining part of Count I, Weatherford alleges violations of 42 U.S.C. § 3604(f)(3)(B) and Section 504 of the Rehabilitation Act. (*See* Compl. (#5) at 4). The Fair Housing Amendments Act ("FHAA") prohibits discrimination "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that "(1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebeler v. M&B Assoc.*, 343 F.3d 1143, 1147 (9th Cir. 2003). A "handicap" is "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h)(1). Major life activities are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b).

In the complaint, Weatherford alleges discrimination based on Defendants denials of her two requests for reasonable accommodations. (*See* Compl. (#5) at 4). In December 2008, Weatherford alleged a lower back disability and a "mental issue" disability and sought a reasonable accommodation in the form of a three-bedroom unit for her husband, her daughter, and herself, although the program allotted for a two-bedroom unit based on her family size. In this instance, Weatherford cannot state a prima facie claim for discrimination based on failure to reasonably accommodate. Here, Defendants do not dispute that Weatherford had a lower back disability. (*See* Defs' Ex. 12 (#51-1) at 113). Pursuant to Dr. Udani's verification form, he stated that she needed a "ground level three-bedroom place pursuant to severe low back pain and lower extremity." (*See* Defs' Ex. 7 (#51-1) at 87). As such Defendants, did not deny Plaintiff a ground level unit and therefore made a reasonable accommodation for her lower back disability. (*See* Defs' Ex. 12 (#51-1) at 110). Although Dr. Udani stated that Plaintiff needed a three-bedroom unit for her lower back pain he did not explain why a three-bedroom unit was "necessary" to afford her an equal opportunity to use and enjoy the dwelling based on her back pain. (*See* Defs' Ex. 12 (#51-1) at 113). Although Weatherford alleged that she had a mental issue and needed an extra bedroom to study, she did not provide any evidence during her request for a reasonable accommodation to establish that disability or the necessity for her requested reasonable accommodation. As such,

Plaintiff fails to establish a prima facie case for discrimination based on her December 2008 request for a reasonable accommodation for a three-bedroom unit. Moreover, at the informal hearing between Weatherford and Defendants in March of 2009, Plaintiff admitted to Defendants that she did not need a three bedroom. (*See* Defs' Ex. 12 (#51-1) at 121-22).

In January 2010, Weatherford submitted a second request for a reasonable accommodation for a house without mold and a 3-bedroom unit with a den or a 4-bedroom unit. (*See* Defs' Ex. 24 (#51-2) at 72). She alleged disabilities in the form of asthma, physical therapy, and a learning disability from a traumatic brain injury. (*See id.*; *see* Defs' Ex. 13 (#51-2) at 11). There, Weatherford failed to establish that she had any disability. First, Dr. Lokshin stated on his verification form that Weatherford "did not show any respiratory disability." (*See* Defs' Ex. 27 (#51-2) at 86). Second, Weatherford admitted during her informal hearing that she had not submitted any documentation for her traumatic brain injury and that she did not go to a physical therapist. (*See* Defs' Ex. 13 (#51-2) at 11, 15). As such, Plaintiff fails to establish a prima facie case for discrimination because she fails to demonstrate that she had a documented handicap during her second request for reasonable accommodation. As such, the Court grants summary judgment on Count I as to the FHAA claim.

To establish a prima facie case under Section 504 of the Rehabilitation Act, a plaintiff must demonstrate that: (1) she is disabled within the meaning of the Rehabilitation Act; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her disability; and (4) the program providing the benefit or services receives federal financial assistance. *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *Weinrich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997); 29 U.S.C. § 794(a). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(9)(B).

In this case, Weatherford's Rehabilitation Act claims fail for the same reasons as her FHAA claims. First, for her 2008 request for a reasonable accommodation, she cannot establish that she was entitled to a three-bedroom house for her lower back pain. Second, for

her January 2010 request for a reasonable accommodation, she cannot establish that she had any disabilities. As such, the Court grants summary judgment on Weatherford's Rehabilitation Act claims. Accordingly, the Court grants Defendants' motion for summary judgment (#51) on Count I.

### III.  Count II

Under Count II, Weatherford alleges that Defendants violated 42 U.S.C. § 3617 when Defendants asked her to sign the March 2010 agreement that she reached with Defendants at the informal hearing with the hearing officer. (Compl. (#5) at 5). Weatherford asserts that Defendants wanted her to waive her rights to file additional complaints or grievances with HUD and then suspended her voucher when she filed a complaint with HUD. (*Id.*).

Pursuant to § 3617, it "shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the anti-discrimination practices for reasonable accommodations. 42 U.S.C. § 3617. To establish a claim for retaliation under this statute, a plaintiff must show that: "(1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). In the § 3617 context, an adverse action must be in the form of coercion, intimidation, threats, or interference. *Id.* The Ninth Circuit has defined "coercion" as "the application of sanctions or force by a government [usually] accompanied by the suppression of constitutional liberties in order to compel dissenters to conform." *Id.* at 1129. Interference is the "the act of meddling in or hampering an activity or process." *Id.* Threat is "an expression to inflict evil, injury, or other damage on another." *Id.* The Ninth Circuit has held that "intimidation" requires a showing that the defendant's activities had generated fear in the plaintiff. *Id.* at 1129 n.4.

In this case, Plaintiff engaged in protected activity because she exercised her right to seek a reasonable accommodation based on her alleged disabilities. *See* 42 U.S.C. § 3604(3)(B). However, Plaintiff fails to establish that Defendants engaged in adverse actions

17

based on her protected activity. Here, Plaintiff alleges two adverse actions–(1) Defendants asked her to sign the settlement agreement that she would not bring another appeal to NRHA for at least the next year and that she would stay in the new unit for the duration of her one year lease, and (2) Defendants suspended her three-bedroom voucher when they discovered that she had filed a HUD complaint. (*See* Compl. (#5) at 5).

With respect to the first adverse action, Weatherford has not provided any evidence that Defendants coerced, intimidated, threatened, or interfered with her to make her agree to the "settlement" terms discussed at the informal hearing with the hearing officer. During the informal hearing, Weatherford did not raise any objections to the hearing officers suggestions that she inspect her future residence to her satisfaction and bring her friends along. (*See* Defs' Ex. 13 (#51-2) at 31-33). She also agreed not to bring another appeal within the year if NRHA gave her a new three-bedroom unit. (*See id.*). As such, Defendants presented Weatherford with a written agreement memorializing what she had agreed to during the informal hearing. (*See* Defs' Ex. 30 (#51-2) at 95). However, Weatherford refused to sign the agreement. She does not present any evidence that Defendants attempted to coerce, intimidate, or threaten her to sign the agreement. As such, the Court grants summary judgment on this claim.

With respect to the second adverse action, although Defendants stated that they were going to place her three-bedroom voucher on "hold" pending the review of the HUD complaint, Defendants issued Weatherford a three-bedroom voucher three days later. (*See* Defs' Ex. 33 (#51-2) at 113; Defs' Ex. 34 (#51-2) at 115). Weatherford has not presented any evidence that this three-day delay compelled her to withdraw her complaint, hampered with her review process, or inflicted any damage on her review process. Moreover, there is no evidence that Defendants put her voucher on "hold" with the intent to coerce, intimidate, threaten, or interfere with Weatherford's right to seek a reasonable accommodation based on her alleged disabilities. As such, the Court grants Defendants' motion for summary judgment on this claim. Accordingly, the Court grants Defendants' motion for summary judgment (#51) on Count II.

### IV. Individual Defendants

To the extent that Weatherford is attempting to sue individual defendants for violations of the Rehabilitation Act, the Court grants Defendants' motion for summary judgment. The Ninth Circuit has held that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by . . . section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Accordingly, the Court grants Defendants' motion for summary judgment (#51) in its entirety.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment (#51) is GRANTED in its entirety with prejudice.

The Clerk of the Court shall enter judgment accordingly.

DATED: This 17th day of May, 2013.

_____
United States District Judge